ADMINISTRACIÓN DE PARQUES Y RECREO PÚBLICOS, demandante y apelada, v. MAYAGÜEZ INDIA BASEBALL CLUB, PONCE SPORTING CLUB, INC., y CAGUAS CRIOLLOS, INC., demandadas y apelantes.

Números 11046–47–48.

*Sometido:* 10 de noviembre de 1954. *Resuelto:* 29 de abril de 1955.

222

*J. Alemañy Sosa, Virgilio Brunet y Otero Suro & Otero Suro,* abogados, respectivamente, de las apelantes; *Hon. Secretario de Justicia José Trías Monge y A. Torres Braschi, Procurador Auxiliar,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

Los parques deportivos Isidoro García, Francisco Montaner e Ildefonso Solá Morales, fueron cedidos en arrendamiento por la Administración de Parques y Recreo Públicos([1]) a los demandados Mayagüez India Baseball Club, Ponce Sporting Club, Inc., y Caguas Criollos, Inc., respectivamente, para la temporada de *baseball* de 1952–53, que comenzaría el 15 de octubre del primer año indicado y terminaría a fines de febrero del siguiente. Por la cláusula *E* de los contratos firmados al efecto se convino en que "la arrendataria se hará responsable de la total conservación del parque...incluyendo limpieza...acondicionamiento de terreno...*y será responsable además de atender los gastos de agua y luz en que se incurran durante toda la temporada, así como también del agua y luz que utilicen en las cantinas*".([2]) (Bastardillas nuestras.)

([1]) En adelante nos referimos a la Administración de Parques y Recreo Públicos simplemente como la "Administración."

([2]) El arrendamiento de los parques de pelota se extendía de octubre de 1952 a febrero de 1953, o hasta que terminaran las series finales o del

Resulta sin embargo, que con anterioridad a la celebración de esos contratos de arrendamiento la Administración había aceptado para dichos parques la tarifa LP–13 de la Autoridad de las Fuentes Fluviales de Puerto Rico (³) por el término de un año, empezando el primero de julio de 1952 y terminando el 30 de junio de 1953. Esa tarifa, según aparece en la transcripción de autos, se lee así:

"ALUMBRADO DE PARQUES DE DEPORTES AL AIRE LIBRE
(Servicio a Voltaje de Distribución Primaria)

DESIGNACIÓN: Tarifa Núm. LP–13.

DISPONIBLE: En toda la isla de Puerto Rico.

APLICACIÓN: Esta tarifa se aplicará al servicio para abonados comerciales cuya carga conectada para alumbrado de parques de deportes al aire libre sea de 500 KW o mayor. El servicio se prestará desde un solo punto de entrega a través de un solo punto de medición.

NATURALEZA DEL SERVICIO: Corriente alterna, 60 ciclos, trifásico, trifilar o a cuatro hilos; a 2,300, 4,000, 4,160, 4,600, 8,000 u otro voltaje de distribución primaria, a opción de la Autoridad. El abonado suministrará la subestación y transformadores requeridos.

PRECIOS:

CARGO MENSUAL POR ENERGÍA: 5.5 centavos por cada kilovatio hora de energía consumida durante el mes.

AJUSTE POR COMBUSTIBLE: El que se describe al principio de este Aviso para Servicio a Voltaje de Distribución Primaria. (⁴)

---

Caribe, de haberlas, pero el de las cantinas se extendía por todo un año, comenzando el día del otorgamiento del contrato y terminando en igual fecha del siguiente año.

(³) En el curso de esta opinión nos referimos de ahora en adelante a la Autoridad de las Fuentes Fluviales de Puerto Rico únicamente como la "Autoridad."

(⁴) El ajuste de combustible se hacía de conformidad con lo estipulado por la tarifa Para Servicio a Voltaje de Distribución Primaria, a saber: "el cargo por cada KWH de energía se aumentará o disminuirá en una cantidad igual a

$$\frac{R \times Btu \times 0.01}{\$N \times E \times 0.80}$$

por cada centavo de aumento sobre o disminución bajo $2.00 por barril en el valor promedio de aceite combustible, a base del precio en el mercado

FACTURA MÍNIMA: $12.00 por cada KW de carga conectada por cada período de doce meses contados desde la fecha en que se conecte el servicio, pagaderos en cuatro pagos iguales de $3.00 cada uno por cada KW de carga conectada, el 30 de noviembre, 31 de diciembre, 31 de enero y 28 de febrero, o en el último día de cada uno de los cuatro meses calendarios comprendidos en toda la mayor parte de la temporada de beisból. El pago total mínimo por el período de doce meses da derecho al abonado a usar cualquiera cantidades de kilovatios hora (consumo anual mínimo garantizado) que puedan comprarse al precio fijado de 5.5 centavos por kilovatio hora más el ajuste de combustible.

"Se facturará al abonado y éste pagará mensualmente por el consumo que indique su medidor o por el mínimo estipulado, cualquiera de los dos que fuere mayor, y al terminar cada período de doce meses se hará una liquidación de todas las cantidades facturadas al abonado durante el período. Si la suma de los kilovatios hora consumidos mensualmente durante el período resultare menor que el consumo mínimo anual garantizado, entonces se acreditará al abonado cualquier cantidad facturada al abonado durante tal períodr de doce meses que exceda del total de cargos mínimos estipulados arriba. Si la suma de kilovatios hora consumidos mensualmente durante el período fuere mayor que el consumo mínimo anual garantizado, entonces se acreditará al abonado cualquier cantidad facturada durante tal período de doce meses que exceda de la suma de los kilovatios hora consumidos durante el período al tipo de 5.5 centavos por kilovatio-hora, más el ajuste de combustible.

"TÉRMINO DEL CONTRATO: No menor de un año. Podrá rescindirse, pasado ese término, mediante notificación de cualquiera de las partes con 60 días de anticipación a la fecha en que se interese que la rescisión sea efectiva."

Al recibir de la Autoridad las facturas del mes de octubre, correspondientes a dichos parques, la Administración envió las mismas a los demandados con súplica de que le remitieran su importe total en cheque expedido a la orden de

---

en Puerto Rico de un barril de 42 galones (U.S.) de petróleo 'Bunker C' más el coste de acarreo, almacenaje y manipulación hasta los tanques de aprovisionamiento de las respectivas estaciones generatrices termoeléctricas de la Autoridad."

En la propia tarifa se especifica el significado de las letras que figuran en la fórmula que aparece más arriba.

la Autoridad. (<sup>5</sup>)    Al igual que lo hicieron respecto a las facturas de los dos meses subsiguientes, los demandados sólo enviaron a la Administración cheques a favor del Secretario de Hacienda por sumas que sólo equivalían al número de kilovatios hora de energía eléctrica consumida por cada uno de ellos durante el mes cubierto por la factura, calculada a razón de 5.5. centavos por kilovatio hora, más el ajuste por combustible.    Ésa era su contención.    Así las cosas y en vista de la discrepancia de criterio existente entre la demandante y los demandados respecto a las cantidades que éstos debían pagar por concepto de la energía eléctrica utilizada en dichos parques, en 21 de enero de 1953 la Administración acudió al Tribunal Superior de Puerto Rico,   Sala de San Juan, con sendos recursos de sentencia declaratoria (<sup>6</sup>) contra los arrendatarios, aquí demandados.    Luego de oír ampliamente a todas las partes, el tribunal a quo dictó en cada uno de los casos la siguiente sentencia declaratoria:

"Por los fundamentos de hecho y de derecho anteriormente expuestos, se declara y resuelve que los demandados vienen obligados por los términos del contrato celebrado entre las partes a pagar a la demandante *el valor de la luz consumida en los parques* envueltos en este litigio durante la temporada de baseball a razón de 5.5 centavos por kilovatio hora consumido, más gastos de petróleo sobre o bajo $2.00 por barril conforme a la tarifa fijada, sujeto al reajuste que se haga el 30 de junio de 1953.    Si resultare de dicho reajuste que el costo promedio por kilovatio hora consumido es mayor de 5.5 centavos, los demandados vienen obligados a pagar la diferencia entre el costo que resultare y lo pagado.    Si resultare que el costo promedio por kilovatio hora consumido es menor, entonces la demandante

_____

(<sup>5</sup>) Las facturas del mes de octubre fueron por la cuarta parte del total de la tarifa mínima.   Igual sucedía con las facturas de los 2 meses siguientes.

La contención de la Administración era que los demandados venían obligados a pagar la totalidad de las facturas.   De estar la demandante en lo cierto, al finalizar la temporada de *baseball* los demandados habrían pagado la totalidad de la tarifa mínima.

(<sup>6</sup>) Véase la Ley núm. 47 de 1931, pág. 379.

vendrá obligada a reembolsar a los demandados la diferencia entre lo pagado y lo que realmente vienen obligados a pagar éstos.

"Los demandados vienen obligados a pagar las costas de este litigio." (Bastardillas nuestras.)

En apelación los demandados imputan al tribunal a quo haber errado (1) al aplicar a los contratos de arrendamiento de parques de las demandadas-apelantes con la demandante-apelada, la forma de pago provista en la tarifa LP–13 de la Autoridad de Fuentes Fluviales de Puerto Rico, sin que dicha forma de pago se hubiera hecho formar parte de los referidos contratos y (2) al dictar la sentencia apelada.

■■ La sentencia apelada es indudablemente errónea. El tribunal a quo determinó que los apelantes venían obligados a pagarle a la Autoridad solamente por la energía efectivamente consumida. Sin embargo, aceptó la aseveración del testigo Rafael R. Ramírez—jefe para aquel entonces de la División de Energía Eléctrica de la Autoridad— de que el precio a que debía computarse la energía eléctrica consumida por los apelantes podía ser afectado por la factura mínima dispuesta por la tarifa. La obligación de la Administración de pagarle a la Autoridad una factura mínima con arreglo a lo dispuesto en la tarifa, constituía en esencia una obligación de pagar por cierta cantidad de energía eléctrica aun cuando ésta no se consumiese. *Cf. Ashtabula Gas Company* v. *Public Utilities Commission*, 133 N.E. 915, 916. En otras palabras, la Administración le garantizó a la Autoridad que le compraría cierta cantidad de energía eléctrica y por ello venía obligada a pagarla al precio estipulado en la tarifa, aun cuando no la usara. Igual obligación asumieron los demandados al comprometerse a pagar los gastos de luz en que incurrieron durante la temporada de pelota (*baseball*).

■■ Ahora bien ¿qué dispone la tarifa LP–13 en cuanto al pago de la factura mínima? Su contexto resulta confuso. Al empezar a hablar de la "factura mínima" dispone que

*ésta se pagará a razón de* "*$12.00 por cada kilovatio de* carga conectada por cada período de doce meses contados desde la fecha en que se conecte el servicio, *pagaderos en cuatro pagos iguales de $3.00 cada uno por cada kilovatio de carga conectada* el 30 de noviembre, 31 de diciembre, 31 de enero y 28 de febrero, o en el último día de cada uno de los cuatro meses calendarios comprendidos en toda la mayor parte de la temporada de beisbol," y que "el pago total mínimo por el período de 12 meses da derecho al abonado a usar cualquiera (sic) cantidades de kilovatios hora (consumo anual mínimo garantizado) que puedan comprarse al precio fijado de 5.5¢ por kilovatio hora más el ajuste de combustible." (Bastardillas nuestras.) Si en lo que al pago de la factura mínima respecta el contexto de la tarifa terminara ahí, no hay duda de que el mismo sería claro. Pero ese contexto continúa expresándose en el sentido de que "se facturará al abonado y *éste pagará mensualmente por el consumo que indique su medidor o por el mínimo estipulado,* cualquiera de los dos que fuere mayor, y al terminar cada período de doce meses se hará una liquidación de todas las cantidades facturadas al abonado durante el período;" que "si la suma de los kilovatios hora *consumidos mensualmente* durante el período resultare menor que el consumo mínimo anual garantizado, entonces se acreditará al abonado cualquier cantidad facturada al abonado durante tal período de 12 meses que exceda del total de cargos mínimos estipulados arriba," y que "si la suma de kilovatios hora *consumidos mensualmente* durante el período fuere mayor que el consumo mínimo anual garantizado, entonces se acreditará al abonado cualquier cantidad facturada durante tal período de 12 meses que exceda de la suma de los kilovatios hora consumidos durante el período al tipo de 5.5¢ por kilovatio hora, más el ajuste de combustible." (Bastardillas nuestras.) Por lo tanto, no es fácil armonizar el segundo párrafo de la factura mínima con el primero. De un lado dice el primer párrafo que la factura mínima se pagará en cuatro pagos iguales

de $3.00 cada uno, al finalizar los meses que se mencionan o los meses naturales comprendidos en la mayor parte de la temporada de pelota, mientras que en el segundo dice que se facturará al abonado y éste pagará *mensualmente* por el consumo que indique su medidor o por el mínimo estipulado. De ahí que consideremos confuso el contexto de la tarifa. No puede haber sido la intención de la Autoridad que la factura mínima se pagara dos veces, o por lo menos 1-2/3 veces, es decir, primero la totalidad de la factura mínima en los cuatro meses que dura la temporada de pelota, y segundo un doceavo de la misma durante cada uno de los meses restantes del año. Tal cosa nos parece irrazonable e ilógica.

Aunque nos damos cuenta de que la Autoridad pasó facturas por la cuarta parte del total de la tarifa mínima (véase la nota 5) y de que al así proceder actuó de conformidad con el primer párrafo de la tarifa sobre "factura mínima," sin embargo, creemos que la forma más lógica de interpretar la tarifa es en el sentido de que la misma se pagará mensualmente, tal cual dispone el segundo párrafo ya citado. En otras palabras, que la factura mínima se pagará mensualmente, por doceavas partes, o sea una duodécima parte de la totalidad de la tarifa cada mes. Interpretada en esa forma, la totalidad de la factura mínima únicamente se pagará una sola vez y no dos veces, o 1-2/3 veces, como ocurriría si aplicáramos ambos párrafos de la tarifa.

Siguiendo ese razonamiento, veamos cuál es la responsabilidad de los demandados en relación con la energía eléctrica utilizada por ellos. Nuestro criterio es que los demandados están en la obligación de pagar tal energía en la siguiente forma: durante todos y cada uno de los meses que dura la temporada de pelota ellos pagarán un doceavo de la factura mínima anual, o la energía realmente consumida durante el mes, al precio estipulado en la tarifa, o sea a razón de 5.5¢ por kilovatio hora, más el ajuste por combustible, cualquiera que sea mayor. De ese modo, ellos pagarán por lo menos la tercera parte de la totalidad de la factura mínima

anual. Desde luego, como de acuerdo con la tarifa al terminar cada período de 12 meses es menester hacer una liquidación o reajuste, los pagos que hagan los demandados estarán sujetos al resultado de ese reajuste o liquidación, así: (1) si en todos y cada uno de los meses que dura la temporada de pelota los demandados usaren energía eléctrica equivalente a un doceavo del consumo mínimo garantizado, o más, al finalizar el período de 12 meses ellos no tendrán derecho a reembolso de clase alguna; (2) si los demandados, en uno o más de los meses de la temporada, no consumieren el mínimo de energía eléctrica correspondiente a ese mes (en el que de acuerdo con el cargo mensual han pagado el consumo mínimo) pero durante la temporada consumen en total el mínimo atribuíble a los cuatro meses, o más de ese mínimo, al hacerse el reajuste se les reembolsará cualquier cantidad que hubieren pagado en exceso del valor de la energía realmente consumida, calculada a razón de 5.5¢ por kilovatio hora, más el ajuste por combustible, aun cuando la Administración durante el resto del año no consumiere la energía garantizada por la tarifa mínima en dicho período; (3) si los demandados no consumieren durante la totalidad de la temporada la parte de la factura mínima atribuíble a tal período, no tendrán derecho a que se les reembolse cantidad alguna, a menos que la Administración durante el resto del año consumiere energía eléctrica en exceso del mínimo atribuíble a ese resto del año y ese consumo de la Administración, unido al consumo de los demandados, fuere mayor que el consumo mínimo autorizado para el año. En este caso los demandados tendrán derecho a que se les reembolse cualquier cantidad que resultare pagada en exceso, al computárseles su consumo real a razón de 5.5¢ por kilovatio hora más el ajuste por combustible.

*Las sentencias apeladas serán revocadas y en su lugar se dictarán otras de conformidad con los términos de esta opinión, sin costas.* (⁷)

El Juez Asociado Sr. Pérez Pimentel no intervino.

(⁷) Véase la sec. 10 de la Ley núm. 47 de 1931, págs. 379, 381.